UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-509-CRS-CHL

SABRINA E. HONEYCUTT,

                                                                              **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,                          **Defendant.**

<u>REPORT AND RECOMMENDATION</u>

Before the Court is the Complaint of Plaintiff, Sabrina E. Honeycutt ("Honeycutt"),
challenging the final decision of the Commissioner of Social Security (the "Commissioner")
denying her claim for childhood disability benefits ("CDB") and supplemental security income
("SSI").  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare a report
and recommendation.  (DN 15.)  Honeycutt filed a brief in support and a Fact and Law Summary
on May 20, 2019, (DN 21), and the Commissioner filed a Fact and Law Summary on August 20,
2019, (DN 27).  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that
the final decision of the Commissioner be **AFFIRMED**.

I.     **FINDINGS OF FACT**

Honeycutt filed applications for CDB and for SSI.  However, the administrative record is
inconsistent both as to the dates she filed those applications and the alleged onset date as to each
application.  In her Fact and Law Summary, Honeycutt claimed that the record showed she filed
an application for CDB on June 15, 1995, and an application for SSI on May 28, 2014, in both of
which she alleged disability beginning May 23, 2014.  (DN 21, at PageID # 858; DN 21-1, at
PageID # 880.)   In his Fact and Law Summary, the Commissioner listed Honeycutt's CDB

application as being filed on either June 12, 1996, or February 28, 2015, and Honeycutt's SSI application as being filed on May 28, 2014, stating that in both applications Honeycutt alleged an onset date of May 28, 2013.  (DN 27, at PageID # 892.)  The ALJ in his decision referenced a February 28, 2015, application for CDB and a November 28, 2013, application for SSI, in both of which Honeycutt alleged disability beginning May 23, 2013.  (DN 11-2, at PageID # 64.)  The only application in the administrative record is an SSI application dated June 2, 2014, in which Honeycutt alleged disability beginning May 23, 2013.  (DN 11-5, at PageID # 386-95.)  The administrative record, other than the ALJ's decision, appears to only reference a CDB application filed June 15, 1996, (DN 11-3, at PageID # 206, 222, 236, 238) and an SSI application filed on May 28, 2014 (*Id.* at 207-08, 237, 256).  As to the alleged onset date, the administrative record contains references to both a May 23, 2013, (DN 11-2, at PageID # 64; DN 11-3, at PageID # 239, 257, 288, 295, 386) and a May 23, 2014, (DN 11-3, at PageID # 208, 222-23, 409, 414) onset date.

Administrative Law Judge ("ALJ") Greg Holsclaw conducted an initial hearing on Honeycutt's application on February 14, 2017, and a supplemental hearing on July 28, 2017.  (DN 11-2, at PageID # 89-130, 172-204.)  In a decision dated September 12, 2017, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether Honeycutt was disabled.  (*Id.* at 61-82.)  Because Honeycutt was not yet eighteen years old on the alleged onset date the ALJ referenced, he also completed the three-step sequential evaluation process promulgated by the Commissioner to determine whether an individual under the age of eighteen is disabled.  (*Id.*)  In completing his evaluation, the ALJ made the following findings:

> (1)     The claimant was born on December 21, 1995 and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on November 28, 2013, the date the application was filed.  The claimant attained age 18 on December 20, 2013.  (*Id.* at 69.)

2

(2)     The claimant has not engaged in substantial gainful activity since the date the application was filed.  (*Id.*)

(3)     Before attaining age 18, the claimant had the followings severe impairments: history of patellofemoral chondromalacia/pain syndrome; obesity; degeneration of spine without canal stenosis; degeneration of the knee; tinnitus; small cystic structure in the posterior right frontal lobe gyrus with history of possible stroke, and residual complaints of headaches and vertigo/dizziness; mitral valve prolapse/costochondritis; ptosis/strabismic amblyopia/congenital cataract/small angle extropia of right eye; depression/adjustment disorder; anxiety.  (*Id.* at 70.)

(4)     Before attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Part A or B. (*Id.* at 73.)

(5)     Before attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the listings.  (*Id.*)

(6)     Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to attaining age 18.  (*Id.* at 78.)

(7)     The claimant has not developed any new impairment or impairments since attaining age 18.  (*Id.*)

(8)     Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments.  (*Id.*)

(9)     Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment.  (*Id.*)

(10)    [S]ince attaining age 18, the claimant has the residual functional capacity to perform less than full range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant with eleventh grade reading ability and limited education (although she has completed high school), has the following exertional and non-exertional limitations: no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day, and for no more than 30 minutes at one time) [*sic*]; no sitting more than six hours out of an eight-hour day, and for no more than 30 minutes at one time; can do unlimited pushing/pulling up to the exertional limitations; no more than occasional balancing, stooping, kneeling, crouching, crawling or climbing ramps or stairs, but no climbing

ladders, ropes or scaffolds; no work in areas of concentrated dusts, fumes, gases or other pulmonary irritants; no work that requires more than frequent far visual acuity, or more than occasional work that requires depth perception; work should be done in a sound environment that is no more than moderately loud (with the term "moderate" used here as defined in the *Selected Characteristics of Occupations*); no work in areas of concentrated full body vibration; no work around dangerous, moving machinery or unprotected heights; no more than simple, routine work; can persist in attention, concentration and pace for two-hours intervals necessary to complete simple tasks; no more than occasional interaction with co-worker or supervisor, but no more than occasional contact with the general public; no more than occasional changes in workplace setting.  (*Id.* at 79.)

(11)   The claimant has no past relevant work.  (*Id.* at 81.)

(12)   The claimant is currently a "younger individual age 18-44."  (*Id.*)

(13)   The claimant has a "limited" education within the meaning of the regulations and is able to communicate in English.  (*Id.*)

(14)   Transferability of job skills is not an issue because the claimant does not have past relevant work.  (*Id.*)

(15)   Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant has been able to perform. (*Id.*)

(16)   The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2013, the day the claimant attained age 18, through the date of this decision.  (*Id.* at 82.)

(17)   The claimant has not been under a disability, as defined in the Social Security Act, from May 23, 2013, through the date of this decision.  (*Id.* at 82.)

Honeycutt requested review by the Appeals Council, which denied her request for review on June 1, 2018.  (*Id.* at 48-53; DN 11-4, at PageID # 382-84.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2019); *see also* 42 U.S.C. § 405(h) (2018) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R.

§ 422.210(c), Honeycutt is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Honeycutt filed this action on August 1, 2018.  (DN 1.)

## II.      CONCLUSIONS OF LAW

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities.[1]  *See* 42 U.S.C. § 401 – 434, 1381-1383f (2018).  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2019).

### A.      Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to

---

[1] Because Honeycutt does not challenge any specific provision of the ALJ's child disability analysis, other than his misstatement of her application date, which will be addressed below, the undersigned will not include any specific discussion of that claim or the standards that apply to the same.

follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.    Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 416.920 (2019). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)    Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 416.909 (2019).

performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999).

### C.   Honeycutt's Contentions

Honeycutt alleged that the ALJ cited to incorrect filing dates for her applications in his decision and that the administrative record contains inconsistent information regarding the same, necessitating a remand.  (DN 21, at PageID # 870-71.)  Honeycutt also argued that the ALJ failed to accord proper weight to the opinion of Dr. Rafael Veroslavsky, Psy. D., ("Dr. Veroslavsky"), invalidating the ALJ's determination of her RFC and causing errors in his findings at subsequent steps.  (*Id.* at 871-74.)  Finally, Honeycutt alleged that the ALJ who conducted her hearing was not properly appointed under the Appointments Clause of the United States Constitution at the time of the hearing.  (*Id.* at 874-78.)  The undersigned will address each of Honeycutt's contentions below.

### 1.   Inconsistency in Record

Honeycutt argued that the inconsistency in the record as to the filing dates of her application necessitates a remand to the ALJ.  (DN 21, at PageID # 870-71.)  She noted that though the record demonstrates that she previously received social security benefits, the record contains no indication as to when her benefits were terminated or why.  (*Id.* at 870.)  She argued that though the ALJ performed a child's disability analysis where none was necessary, it is currently unclear whether the ALJ should have also performed a continuing disability analysis, thus necessitating a remand for further proceedings.  (*Id.* at 870-71.)

While the undersigned notes that the record is inconsistent as to date of Honeycutt's applications for CDB and SSI, as well as her alleged onset date, as set forth in the above findings

of fact, the undersigned finds that Honeycutt has failed to demonstrate that the same constitutes

reversible error.  As highlighted by the Commissioner, the ALJ went on to do an adult analysis

after he did a child disability analysis because Honeycutt was not yet eighteen as of the May 23,

2013, disability onset date the ALJ referenced in his decision.  (DN 27, at PageID # 894-95; DN

11-2, at PageID # 69-82.)  It is unclear how the extra, allegedly-unnecessary analysis by the ALJ—

if the Court accepts the filing dates and onset date proffered by Honeycutt—adversely impacted

Honeycutt unless the analysis itself was somehow deficient.[3]  Because the ALJ also referenced a

May 23, 2013, alleged onset date in his decision, the earliest of the potential dates in the record, it

is unclear how this use of an earlier date deprived Honeycutt of any necessary analysis.  Further,

Honeycutt never raised the issue of the inconsistent dates within the record before either the ALJ

or Appeals Council, both of which would have been in a better position than this Court to resolve

the inconsistency.[4]

As to Honeycutt's contention that the ALJ should have potentially performed a continuing

disability review, the undersigned finds there is no evidence in the record to suggest the same.

Though Honeycutt stated in her pre-hearing brief to the ALJ that she "received Social Security

benefits when she was six years old due to developmental delays and health issues," (DN 11-6, at

PageID # 486), she never stated that she was still receiving benefits at the time she filed the instant

applications or at the time of the two hearings in this case.  She did not even mention previously

receiving benefits during either the February 14, 2017, or July 28, 2017, hearings before the ALJ

(DN 11-2, at PageID # 89-130, 172-204).  She likewise did not raise the issue of any potential

---

[3] Honeycutt's only argument regarding the content of the ALJ's analysis is related to his determination of her mental RFC and that argument will be addressed below.
[4] At both hearings in this case, Honeycutt's representative did not objection to the admission of the exhibits into the administrative record.  (DN 11-2, at PageID # 93, 176-77.)  Indeed, when the ALJ asked, "Is there anything that is not in the file that you feel should be?"  Honeycutt's representative stated, "I believe everything has been submitted, Your Honor."  (*Id.* at 177.)

need for a continuing disability analysis in her brief to the Appeals Council.  (*Id.* at 54.)  There is simply no evidence in the record that the benefits she purportedly received when she was six years old continued through the time of her current applications sufficient to trigger a need for a continuing disability analysis.  Honeycutt does not even allege the same in her instant brief and instead merely speculates that the ALJ *may* have been required to perform one. (DN 21, at PageID # 870-71.)  The undersigned finds that this perfunctory and speculative argument is insufficient to justify a remand.  *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

## 2.   Dr. Veroslavsky's Opinion

Honeycutt argued that the ALJ's RFC determination was not supported by substantial evidence because he ascribed only partial weight to the opinion of consultative examiner ("CE") Dr. Veroslavsky "without explanation," where Dr. Veroslavsky provided the only mental opinion in the record.   (DN 21, at PageID # 871-74.)   Honeycutt then alleged that this rejection subsequently affected the validity of subsequent findings, including those based on the testimony of the vocational examiner ("VE").   The undersigned will address these arguments separately below.

### a.   RFC

A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record." 20 C.F.R. § 416.945(a) (2019). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record.  *Id.*  Thus, in making the RFC finding, the ALJ must assign

weight to the medical source statements in the record and consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends. *Id.* § 416.945(a)(3); 20 C.F.R. § 416.927(c) (2019). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.' " *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.' " *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Here, the ALJ ascribed only partial weight to the opinion of CE Dr. Veroslavsky, noting that Dr. Veroslavsky had indicated that Honeycutt had "moderate" or "significant" limitations in certain areas. (DN 11-2, at PageID # 80.) Specifically, Dr. Veroslavsky found in his opinion that

Honeycutt's capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks and her capacity to respond to supervision, coworkers and work pressures in a work setting were moderately affected.  (DN 11-7, at PageID # 594.)  He also found that her ability to tolerate the stress and pressure of day-to-day employment and her ability to sustain attention and concentration towards performance of simple repetitive tasks were significantly affected.  (*Id.*)  Honeycutt argued that the ALJ failed to adequately explain the weight attributed to Dr. Veroslavsky's opinion and that the ALJ's mental RFC determination was inconsistent with Dr. Veroslavsky's limitations regarding her ability to tolerate stress and sustain attention and concentration.[5]  (DN 21, at PageID # 873.)

Even if not stated as explicitly and in such detail as Honeycutt would prefer, the undersigned finds that the ALJ's opinion contains sufficient information to substantiate a conclusion that the ALJ assigned only partial weight to Dr. Veroslavsky's opinion based on its inconsistency with the record.  The ALJ attributed great weight to the opinions of the state agency physicians who had determined that Honeycutt had no more than moderate limitations in any area.  (DN 11-2, at PageID # 81.)  Specifically, Dr. David Tessler, Psy. D, and Dr. Michelle Bornstein, Psy. D., found that Honeycutt would be able to maintain concentration and pace for periods of at least two hours and in doing so explicitly stated that Dr. Veroslavsky's opinion was "an overestimate of the severity of [Honeycutt's restrictions/limitations and based only a snapshot of [her] functioning."  (DN 11-3, at PageID # 217-20, 231-34, 251-53, 268-71.)  At step three, the

---

[5] Though Honeycutt continuously emphasized in her brief that the ALJ rejected the "only examining mental opinion in the record," an ALJ is not required to base his RFC on a medical opinion.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("The ALJ was not required to obtain a medical expert to interpret the medical evidence related to [claimant]'s impairments."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (recognizing that there is no authority to support the proposition "that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered").  Instead, the determination of a claimant's RFC is left to the ALJ. 20 C.F.R. § 416.927(d)(2).  The ALJ's RFC determination must "be supported by substantial evidence and not merely on the ALJ's own medical interpretation of the record."  *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (W.D. Mich. 2017).  Therefore, the undersigned finds Honeycutt's contention without merit.

ALJ had determined that Honeycutt had a moderate limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself, citing to evidence of Honeycutt's daily activities, including that Honeycutt took care of pets, did some personal care, could prepare some meals, does some laundry and cleaning, can go out alone, can shop in stores, etc. (DN 11-2, at PageID # 79.) The ALJ elsewhere noted that the medical evidence supported a finding that Honeycutt's "extreme complaints of symptoms lacked clear support by objective findings." (*Id.* at 80.) The ALJ had also cited to medical records noting that Honeycutt's responses were coherent and relevant during a neurological exam, she was oriented to dates and places, and she could understand and follow verbal commands. (*Id.* at 71.) He likewise cited to an "unremarkable" psychiatric exam during which Honeycutt was alert and oriented, demonstrated intact judgment and insight, and displayed a normal mood and appropriate affect. (*Id.* at 72 (citing DN 11-7, at PageID # 655-57).) These records support a conclusion of lesser limitations than those imposed by Dr. Veroslavsky.

To the extent that the ALJ's explanation of the reason for the weight he ascribed to Dr. Veroslavsky's opinion was deficient, the undersigned finds that any error was harmless in light of the fact that the ALJ's larger determination of Honeycutt's mental RFC was supported by substantial evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-508 (6th Cir. 2006). The ALJ found that Honeycutt was limited to "no more than simple, routine work; [could] persist in attention, concentration and pace for two-hour intervals necessary to complete simple tasks; no more than occasional interaction with co-worker or supervisor, but no than occasional contact with the general public; no more than occasional changes in workplace setting." (DN 11-2, at PageID # 79.) In support, the ALJ cited to the evidence noted above, including the opinions of the state agency physicians. Even Dr. Veroslavsky's opinion itself noted that Honeycutt had

12

adequate attention and concentration during his examination and "appear[ed] to have fair coping skills to manage her distress." (DN 11-7, at PageID # 593.) However, despite these findings, Dr. Veroslavsky still found that her ability to tolerate stress and sustain attention and concentration was significantly affected. (*Id.* at 594.) Dr. Veroslavsky did not express any opinion about what that conclusion meant in terms of functional limitations or define what a "significant limitation" was. Indeed, Honeycutt did not identify any treatment provider in the record who expressed functional limitations on her mental abilities. Nonetheless, the ALJ did impose some limitations on Honeycutt's ability to sustain concentration and focus in response to the record and included a limitation on her interaction with coworkers, supervisors, and the general public, as well as on the amount of change in the workplace setting, all of which would have an impact on the stress and pressure the work would cause for Honeycutt. Based on the foregoing, the undersigned finds both the weight the ALJ assigned to Dr. Veroslavsky's opinion and the ALJ's determination of Honeycutt's mental RFC to be supported by substantial evidence.

**b.    Hypothetical to VE**

Honeycutt also argued that to the extent the ALJ failed to incorporate the findings of Dr. Veroslavsky in his hypothetical to the VE, his determination at step five regarding the availability of other work Honeycutt was capable of performing was unsupported by substantial evidence. (DN 21, at PageID # 873-74.) At step five, the ALJ has the burden of demonstrating that there exist a significant number of jobs in the economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2019); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform

considering the combination of his or her limitations.  *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). A VE's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

Honeycutt cited to Dr. Veroslavsky's opinion that her ability to tolerate stress and pressure was significantly affected and the VE's testimony in response to a question posed by Honeycutt's representative that there would be no work available to an individual who could not adapt to any stress or pressure to argue that the ALJ's hypothetical was deficient.  (DN 21, at PageID # 873-74.)  However, Honeycutt's argument is based on a strained reading of Dr. Veroslavsky's opinion. As noted by the Commissioner, Dr. Veroslavsky did not indicate in his report that Honeycutt was wholly incapable of managing stress and pressure, just that here abilities were "significantly affected."  (DN 11-7, at PageID # 594.)  Further, an ALJ's hypothetical need only include those limitations that he or she has accepted as credible.  *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir.2013).  As noted above, the undersigned has already found both the ALJ's decision to assign only partial weight to Dr. Veroslavsky's opinion and his mental RFC for Honeycutt to be supported by substantial evidence.  Therefore, the undersigned finds that the ALJ properly omitted limitations

that he deemed not to be credible in posing his hypothetical to the VE and finds no error in the ALJ's step five analysis.

### 3.    Appointments Clause

Finally, Honeycutt argued that the ALJ who conducted her hearing and issued the decision for which she now seeks judicial review was not properly appointed under the Constitution's Appointment's Clause at the time of the hearing thus requiring a remand on constitutional grounds. (DN 21, at PageID # 874.)  Honeycutt cited to the recent United States Supreme Court decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), in support of her argument.

In *Lucia*, plaintiff Lucia had been found by an ALJ for the Securities and Exchange Commission ("SEC") to have violated the Investment Advisors Act, and the ALJ had imposed sanctions, including $300,000 in civil penalties and a lifetime bar from the investment industry. *Id.* at 2049-50.  Lucia argued that the ALJ was not constitutionally appointed pursuant to the Appointments Clause, Art. II., § 2, cl. 2, of the Constitution and, therefore, the proceedings were invalid.[6]  *Id.* at 2050.  Relying on its prior decision in *Freytag v. Commissioner*, 501 U.S. 868 (1991), the Court found that SEC ALJs held a career appointment and possessed "nearly all of the tools of federal trial judges."  *Id.* at 2053.  Accordingly, the Supreme Court found that they qualified as "Officers" within the meaning of the Appointments Clause, Art. II., § 2, cl. 2, of the Constitution.  *Id.* at 2049.  Because the SEC ALJ was without a proper appointment when he issued his decision, the Supreme Court held that the "remedy for an adjudication tainted with an appointments violation [wa]s a new 'hearing before a properly appointed' official," which could

---

[6] As the Supreme Court explained, "The Appointments Clause prescribes the exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so."  *Id.* at 2051.  Instead, the SEC ALJ had been appointed by SEC staff members.  *Id.*

not be the same ALJ who issued the initial decision.  *Id.* at 2055 (quoting *Ryder v. United States,* 515 U.S. 177, 183, 188 (1995)).

Honeycutt argued that like the SEC ALJs in *Lucia*, the ALJ in the present case was an "Officer" within the meaning of the Appointments Clause who had not been properly appointed.[7] (DN 21, at PageID # 875.)  However, Honeycutt did not raise this issue before either the ALJ or the Appeals Council.  In *Lucia*, the Supreme Court had held that "'one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief."  *Lucia*, 138 S. Ct. at 2055 (emphasis added) (quoting *Ryder*, 515 U.S. at 182-83).  The Sixth Circuit has held that failure to raise a claim at the administrative level generally forfeits the ability to raise the same in federal court. *See Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001); *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 405 (6th Cir. 2016) (holding that claimant forfeited challenge to ALJ's failure to issue subpoena where challenge was not raised at the administrative hearing); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (noting that claimant forfeited argument presented for the first time to the District Court). Further, applicable Social Security regulations require all objections to "issues to be decided at the hearing" to be raised "at the earliest possible opportunity, but no later than [five] business days before the date set for the hearing . . . ."  20 C.F.R. § 404.939 (2019).  The regulations even provide an expedited appeal process if a claimant challenges the unconstitutionality of a particular provision of law.  20 C.F.R. § 404.924 (2019).  20 C.F.R. § 404.940 also provides that if a claimant "object[s] to the administrative law judge who will conduct the hearing, [the claimant] must notify the administrative law judge at [his or her] earliest opportunity."  20 C.F.R. § 404.940 (2019).  For

---

[7] As noted by both Honeycutt and the Commissioner, subsequent to the decision in *Lucia*, on July 16, 2018, the Commissioner ratified the appointments of all Social Security ALJs and Appeals Council judges to address any Appointments Clause issues.  (DN 21, at PageID # 875; DN 27, at PageID # 903 n. 9.)

these reasons, the undersigned finds that Honeycutt's failure to timely raise her Appointments Clause claim before the Commissioner forfeits her right to pursue the same in this appeal.

Honeycutt argued that *Sims v. Apfel*, 530 U.S. 103 (2000), compels the opposite conclusion because exhaustion is not required in a social security proceeding.  (DN 21, at PageID # 876.)  The undersigned disagrees.  In *Sims*, the Supreme Court held that issue exhaustion is not required in a request for review by the Appeals Council.  *Sims*, 530 U.S. at 112 (plurality opinion).  In doing so, the Supreme Court explicitly noted that "[w]hether a claimant must exhaust issues before the ALJ [wa]s not before [the Court]."  *Id.* at 107.  The Sixth Circuit has held that failure to raise a claim before the ALJ forfeits the ability to raise the claim on appeal to the district court.  *See Maloney*, 480 F. App'x at 810; *Luukkonen*, 653 F. App'x at 405.  Accordingly, *Sims* does not impact the undersigned's reasoning above.  Additionally, and as noted previously, the Social Security regulations require a claimant to raise issues "at the earliest possible opportunity.  *See* 20 C.F.R. §§ 404.939, 404.940.

Honeycutt also argued that she was unable to raise her Appointments Clause challenge earlier because *Lucia* had not yet been decided at the time she requested review of the ALJ's decision and at the time her request for review was denied.  (DN 21, at PageID # 877-78.)  However, the Supreme Court in *Lucia* applied its prior decision in *Freytag*, which was decided in 1991.  Therefore, Honeycutt "had access to the building blocks of an Appointments Clause challenge long before [*Lucia*] existed."  *Fitzgerald v. Berryhill*, No. 1:17-cv-00144-GNS-LLK, 2019 WL 1125666, at *4 (W.D. Ky. Mar. 12, 2019).  Accordingly, the undersigned finds Honeycutt's argument that she was unable to raise her Appointments Clause argument prior to *Lucia* to be without merit.

Honeycutt cited to persuasive cases that came to the opposite conclusion from the Middle District of Pennsylvania, Eastern District of Pennsylvania, and Eastern District of North Carolina. (DN 21, at PageID # 876-77.)  While the Sixth Circuit has yet to address this issue, the undersigned notes that the conclusion that Honeycutt forfeited her Appointments Clause claim in is in accord with the decisions of other District Courts in this Circuit to have addressed the same.  *See, e.g., Fitzgerald*, 2019 WL 1125666, at *1; *Blackburn v. Berryhill*, 368 F.Supp.3d 1110 (E.D. Ky. 2018); *Fisher v. Comm'r of Soc. Sec.*, 404 F. Supp. 3d 1156, 1161 (N.D. Ohio 2019); *Willis v. Comm'r of Soc. Sec.*, No. 1:18-CV-158, 2019 WL 5690610, at *2 (S.D. Ohio Nov. 4, 2019); *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 568 (E.D. Mich. 2019); *Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 779 (E.D. Mich. 2019); *Page v. Comm'r of Soc. Sec.*, 344 F.Supp.3d 902, 904 (E.D. Mich. 2018); *Bocks v. Comm'r of Soc. Sec.*, No. 1:17-CV-988, 2019 WL 1416866, at *4 (W.D. Mich. Mar. 29, 2019); *Pugh v. Comm'r of Soc. Sec.*, No. 1:18-cv-78, 2018 WL 7572831, at *1 (W.D. Mich. Nov. 8, 2018); *Kincaid v. Saul*, No. 3:18-CV-152-DCP, 2019 WL 4647249, at *10 (E.D. Tenn. Sept. 24, 2019); *Berry v. Saul*, No. 1:18-CV-00046, 2019 WL 4923979, at *14 (M.D. Tenn. Aug. 20, 2019), *report and recommendation adopted*, No.1:18-CV-00046, 2019 WL 4916566 (M.D. Tenn. Oct. 4, 2019); *Smith v. Saul*, No. 1:17-CV-01236-CGC, 2019 WL 4131740, at *1-2 (W.D. Tenn. Aug. 28, 2019).  *Cf. O'Dell v. Saul*, No. 2:19-0054, 2019 WL 4685415, at *2 (M.D. Tenn. Sept. 9, 2019), *report and recommendation adopted*, No. 2:19-CV-00054, 2019 WL 4673618 (M.D. Tenn. Sept. 25, 2019) (remanding case to ALJ where claimant made a timely challenge under the Appointments Clause at the administrative level).  Honeycutt did not acknowledge in her brief that the weight of the authority is against the position she advocated and pointed to no persuasive or binding authority in this Circuit compelling a conclusion different than the one reached by the undersigned above.

For these reasons, the undersigned finds that Honeycutt has waived her Appointments Clause argument by failing to timely raise the same at the administrative level.

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

February 18, 2020

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).