UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SABRINA E. HONEYCUTT                                                                    PLAINTIFF

v.                                                                                    NO. 3:18-CV-509-CRS

ANDREW M. SAUL,
Commissioner of Social Security                                                         DEFENDANT

## MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge (the "report") in this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial by the Commissioner of Social Security ("Commissioner") of plaintiff Sabrina E. Honeycutt's claims for childhood disability benefits ("CDB") and Supplemental Security Income ("SSI").

The matter was referred to the United States Magistrate Judge for findings of fact and recommendation. The magistrate judge conducted a review of the findings set forth in the decision of the Administrative Law Judge ("ALJ"), concluding that substantial evidence supports those findings of the and recommending that the Commissioner's decision to deny benefits be affirmed. DN 28. Honeycutt has filed objections to the magistrate judge's report. The court has conducted a de novo review of those portions of the report to which the claimant objects, in accordance with 28 U.S.C. § 636(b)(1)(C).

Honeycutt was born December 21, 1995. She contends that she received childhood disability benefits for developmental delays very early in life,[1] but there is nothing in the record concerning when benefits were received, when benefits were terminated or why. Honeycutt does not allege that she was receiving CDB at the time of her application in issue in this case.

The record references a claim for SSI filed May 28, 2014 indicating a disability onset date of May 23, 2013. Honeycutt affirms an SSI filing date of May 28, 2014 but claims a disability onset date of May 23, 2014. A June 2, 2014 Application Summary for SSI appears in the record (DN 11-5, PageID # 386) in which Honeycutt references a disability onset date of May 23, 2013. The ALJ also references a February 28, 2015 claim for CDB. There is no corresponding application in the record, but Honeycutt and the record do reference a CDB claim (see fn. 1 below).

Honeycutt appealed the denial of her claims for benefits and was afforded an initial and supplemental hearing on February 14, 2017 and July 28, 2017, respectively. Honeycutt appeared at the hearings, represented by counsel, and gave testimony. A vocational expert, and Danny Honeycutt, Sabrina's father, were also present and gave testimony.

The ALJ conducted a comprehensive evaluation of Honeycutt's claims, performing both a three-step sequential evaluation because Honeycutt was not yet 18 years old on the alleged onset date of May 23, 2013, and the five-step sequential evaluation to determine whether Honeycutt, as an adult claimant, was disabled.

As an initial matter, Honeycutt objects to the failure of the ALJ to further investigate and obtain additional evidence concerning the dates of Honeycutt's applications and alleged onset date.

---

[1] A reference to a June 15, 1996 application for CDB is in the record (DN 11-3, PageID #s 206, 222, 236, 238), while the application for CDB itself is not. Honeycutt states that an application was filed June 15, 1995. However, this is impossible since that date predates her December 1995 birth.

Honeycutt contends that the ALJ had a duty to further develop the record in light of the lack of clarity concerning the filing and onset dates. She cites to *Strang v. Commissioner of Social Security*, 611 Fed.Appx. 271 (6th Cir. 2015) for the proposition that a gap in the record triggers a duty of the ALJ to further investigate and develop the record. *Strang* is distinguishable from the case at bar inasmuch as the ALJ in *Strang* acknowledged the existence and availability of additional medical documentation and the need for it in that case. Most significantly, the ALJ took it upon himself to commit to obtaining the medical records for the unrepresented claimant before him. Indeed, the Sixth Circuit quoted extensively from the record of Strang's hearing before the ALJ in which the ALJ stated, among other things, "Okay. So it sounds to me like it would be pretty important for me to get Dr. Wagner's records and see what is going on…I will do that before I make any decision in the case." *Id.* at 273. Here, the claimant was represented. As noted by the magistrate judge, the ALJ in Honeycutt's case asked at the hearing whether there was "anything that is not in the file that you feel should be?" to which Honeycutt's representative responded "I believe everything has been submitted, Your Honor." (R. at 177). DN 28, p. 8, n. 4.

There is no contention here that a gap exists in Honeycutt's medical records. Rather, the claimant alleges confusion in a number of dates, an administrative conundrum adequately addressed by the ALJ when he employed the earliest possible disability onset date. He performed a CDB assessment *and also* conducted a five-step sequential evaluation for Honeycutt's disability claim.

The court in *Strang* found reversible error in the ALJ's failure to obtain and consider the promised medical records. *Strang* also stands for the proposition that "if an agency has failed to adhere to its own procedures, we will not remand for further proceedings unless the claimant has

been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Strang*, 611 Fed.Appx. at 276. Here, the magistrate judge correctly discerned that although Honeycutt criticized the confusion in dates, she did not identify any prejudice flowing from that confusion. The court cannot conceive of any prejudice, as it appears the ALJ arguably provided greater consideration of the claims for disability than was required. The claimant has not argued prejudice with any particularity. She urges that, *possibly*, a continuing disability evaluation *could have been* warranted. However, Honeycutt has not indicated that she was receiving benefits at the time of the applications. Therefore, even if her assertion were stated in more affirmative terms, there is no evidence in the record to support a claim requiring a continuing disability evaluation.

Honeycutt next argues that the ALJ failed to sufficiently explain the partial weight he gave to the opinion of consulting examiner Dr. Rafael Veroslavsky, Psy.D. As he was required to do, the ALJ based his findings addressing Honeycutt's Residual Functional Capacity ("RFC") on consideration of medical source statements and all other evidence, medical and non-medical, in the record. 20 C.F.R. §416.945(a)(2019). The magistrate judge found that the ALJ did just that, and we agree.

As noted by the magistrate judge, in affording weight to an examining source, the ALJ must consider the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty. *See, Ealy v. Commissioner of Social Security*, 594 F.3d 504, 514 (6th Cir. 2010). The ALJ need not give "good reasons" for the weight to be afforded the opinion of an examining physician. Rather, the ALJ need only say enough to permit an appellate court to "trace the path" of the reasoning. *Stacey v. Commissioner*

*of Social Security*, 451 Fed.Appx. 517, 519 (6th Cir. 2011)(quoting *Diaz v. Charter*, 55 F.3d 300, 307 (7th Cir. 1995)).

Dr. Veroslavsky found that Honeycutt's capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks is moderately affected, and that her ability to sustain attention and concentration toward performance of simple repetitive tasks and her ability to tolerate stress and pressure of day-to-day employment are significantly affected. The state agency physicians, Dr. David Tessler, Psy.D. and Dr. Michelle Bornstein, Psy.D., on the other hand, both found that Honeycutt would be able to maintain concentration and pace for periods of at least two hours and both doctors found Dr. Veroslavsky's opinion in that regard to be "an overestimate of the severity of [Honeycutt]'s restrictions/limitations and based only on a snapshot of the individual's functioning." DN 11-3, PageIDs #217-220; 251-253. The ALJ reconciled the findings by affording great weight to the state agency physicians' opinions that Honeycutt has no more than moderate limitations arising from psychological impairments. In concluding to afford partial weight to Dr. Veroslavsky's opinion, he stated that the opinion that Honeycutt "had a GAF estimate of 45, denoting 'serious' symptoms, is not supported." DN 11-2, p. 16, PageID #79. The ALJ found "The evidence shows that [Honeycutt] had mild limitations in understanding, remembering, or applying information, and moderate limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. [Honeycutt] feeds and waters the pets. She has knee and back pain, but she has not indicated any problems with personal care, other than her mother has to help with bathing. She prepares meals, once or twice a week. She does laundry and cleaning. She does not drive, but she can go out alone. She shops in stores. She can handle a savings account, count change and use a checkbook/money orders." With regard to Honeycutt's self-reporting of symptoms and

5

limitations, the ALJ found that her "extreme complaints of symptoms lacked clear support by the objective findings," stating that "[a]t least one health provider noted that the claimant endorsed a somatic profile, with high levels of perceived neurological and cognitive distress along with anxiety and self doubt…With regard to the claimant's knees, the claimant showed a full range of motion on examination…" DN 11-2, p. 17, PageID #80.

The magistrate judge noted that Veroslavsky's own opinion reported Honeycutt had "adequate attention and concentration" during his examination and "appear[ed] to have fair coping skills to manage her distress," yet concluded that her ability to tolerate stress and sustain attention and concentration in the workplace was "significantly affected." (DN 11-7, at PageID #s 593, 594). In his decision, the ALJ noted other reports supportive of a finding of moderate limitation; that is, that Honeycutt provided coherent and relevant responses, was oriented to dates and places, and could follow verbal commands during a neurological examination, and had an "unremarkable" psychiatric examination during which she was alert and oriented, demonstrated intact judgment and insight, and displayed normal mood and appropriate affect. (DN 11-7, at PageID # 655-657; 11-2, at PageID # 71). Finally, also supportive of his finding of moderate limitations was Honeycutt's self-report of her daily activities.

The court agrees with the magistrate judge that the evaluation by the ALJ was sufficiently specific and comprehensive to afford the court the opportunity to conduct meaningful review. While Honeycutt isolates two sentences from the ALJ's decision, when these sentences are read in context, it is clear that the ALJ's findings were based upon his careful review and evaluation of *all* of the medical and non-medical evidence of record, finding the greater weight of evidence indicating a moderate limitation.

We agree with the magistrate judge that the above findings provided substantial evidence for the ALJ's determination to afford partial weight to Dr. Veroslavsky's opinion and for the broader RFC determination:

> After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform less than full range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant with eleventh grade reading ability and limited education (although she has completed high school), has the following exertional and non-exertional limitations: no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day, and for no more than 30 minutes at one time; can do unlimited pushing/pulling up to the exertional limitations; no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs, but no climbing ladders, ropes or scaffolds; no work in areas of concentrated dusts, fumes, gases, or other pulmonary irritants; no work that requires more than frequent far visual acuity, or more than occasional work that requires depth perception; work should be done in a sound environment that is no more than moderately loud (with the term "moderate" used here as defined in the *Selected Characteristics of Occupations*); no work in areas of concentrated full body vibration; no work around dangerous, moving machinery or unprotected heights; no more than simple, routine work; can persist in attention, concentration and pace for two-hour intervals necessary to complete simple tasks; no more than occasional interaction with co-worker or supervisor, but no more than occasional contact with the general public; no more than occasional changes in the workplace setting.

DN 11-2, p. 16, PageID #79.

The ALJ concluded, based upon the testimony of the vocational expert, that "since attaining age 18, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate." DN 11-2, p. 19, PageID # 82.

The court finds that the magistrate judge's report correctly found that the ALJ's decision was supported by substantial evidence.

Honeycutt also raises a constitutional challenge in this court which was not first made to the ALJ or at the review stage to the Appeals Council. Under a very thorough analysis, the

magistrate judge rejected the argument as forfeited for failure to raise it at the administrative level. Honeycutt takes issue with the magistrate judge's analysis and objects to his conclusion.

Honeycutt contends that ALJ Holsclaw was not constitutionally appointed at the time he was deciding her claims and therefore, under the authority of *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), her claims for benefits should be remanded. The decision in *Lucia* which held that Securities and Exchange Commission ALJs prompted the Commissioner of Social Security to ratify the appointments of all Social Security ALJs and Appeals Council judges to address the Appointment Clause question.

The ALJ's opinion denying Honeycutt benefits for benefits was rendered on September 12, 2017 and the Appeals Council denied Honeycutt's request for review on June 1, 2018. The Supreme Court issued the *Lucia* decision on June 21, 2018, after the denial of benefits had become final. Commissioner Berryhill's approved all ALJ and AAJ appointments on July 16, 2018.

The magistrate judge noted *Lucia* held that "'one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." DN 28, p. 16, PageID #929, quoting *Lucia*, 138 S.Ct. at 2055 (emphasis added). He found that Honeycutt's failure to timely raise the challenge forfeited her Appointments Clause claim, citing numerous district court decisions from within the Sixth Circuit reaching this same conclusion.

The Social Security regulations require a claimant to raise issues "at the earliest possible opportunity" (*See* 20 C.F.R. §§404.939, 404.940). Honeycutt argued that it was impossible to raise the challenge prior to the issuance of *Lucia* and that there is no statutory or regulatory exhaustion requirement that governs SSA proceedings. In her objections, Honeycutt cites to

*Cirko o/b/o Cirko v. Commissioner*, 948 F.3d 148 (3d Cir. 2020) urging that the case "changes the landscape of the appointments clause issue," insofar as it is the first appellate level case to find that exhaustion should not be required for Appointments Clause claims. DN 29, p. 5, PageID # 937.

There is no change in the landscape of Appointments Clause issues in this circuit, as the *Cirko* decision is not binding on us. There has been a split of authority among the circuits at the district court level concerning forfeiture of an Appointment Clause challenge, and the split continues after the Third Circuit decision in *Cirko*. Honeycutt has cited a number of district court decisions, issued both before and after *Cirko*, which followed the *Cirko* line of reasoning. However, the vast majority, including numerous district courts in this circuit that have considered the issue,[2] have found that such claims not timely made are forfeited. The court finds persuasive the magistrate judge's analysis and his finding that although *Lucia* was decided after the decision of the Commissioner became final, Honeycutt "had access to the building blocks of an Appointment Clause challenge long before [*Lucia*] existed." DN 28, p. 17, PageID # 930, quoting *Fitzgerald v. Berryhill*, No. 1:17-cv-00144-GNS-LLK, 2019 WL 1125666, at *4 (W.D.Ky. Mar. 12, 2019). Honeycutt was represented during the administrative process. We find her argument that she was unable to raise her Appointments Clause challenge prior to *Lucia* to be untenable.[3] Further, we note there is a valid concern that "[a]pplying *Freytag*'s rare case exception [excusing a failure to raise a claim before an agency] would disincentivize petitioners…from raising Appointments Clause challenges at the

---

[2] The Sixth Circuit has yet to decide the issue.

[3] Indeed, Honeycutt argues in her objections that she could not have raised her claim until after July 16, 2018 when she knew the ALJs were "Officers" for purposes of application of the Appointments Clause because Commissioner Barryhill approved the appointments on that date. We reject this argument out of hand, as certainty concerning the contours of a claim is not required for a claimant to raise the issue.

administrative level." *Gagliardi v. Social Security Administration*, No. 18-cv-62106-BLOOM/Valle, 2020 WL 966595 (S.D.Fla. Feb. 28, 2020)(quoting *Muhammad v. Berryhill,* 381 F.Supp.3d 462 (E.D.Pa. 2019) and declining to follow *Cirko*).

For these reasons, we will accept and adopt the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge and affirm the decision of the Commissioner denying Honeycutt benefits. A separate order and judgment will be entered this date in accordance with this opinion.

March 20, 2020

**IT IS SO ORDERED.**

Charles R. Simpson III, Senior Judge
United States District Court